United States District Court
Southern District of Texas
ENTERED

MAY 29 2008

Michael N. Milby, Clerk of Court
By Deputy Clerk P. Ahumada

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DR. HILDA MEDRANO, <br> Plaintiff, | § § § | |
| v. | § § | CIVIL NO. M-08-86 |
| THE UNIVERSITY OF TEXAS-PAN AMERICAN, <br> Defendant. | § § § § | |

**MEMORANDUM, OPINION AND ORDER**

I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff Dr. Hilda Medrano ("Plaintiff") filed her Original Petition against the Defendant, The University of Texas-Pan American ("UTPA"), in the 398th District Court of Hidalgo County, Texas on June 8, 2005. (Docket No. 2, Ex. 4). She asserted the following claims: (1) breach of contract against UTPA for its failure to pay her three months of benefits from May 31, 2005 through August 31, 2005 and its failure to provide her with a lump-sum payment of her accrued vacation benefits upon termination; (2) violations of the Equal Pay Act, 29 U.S.C. § 206(d), for paying Plaintiff at a lower rate than her male counterparts for substantially equal work; and (3) violations of the Takings Clause of the Texas Constitution for improperly denying her vacation benefits. (*Id.*) She sought "compensatory damages, attorney's fees, and all damages allowed by law." (*Id.*)

The Original Petition asserted that in the Fall of 1996, Plaintiff was appointed Dean of the College of Education at UTPA. (*Id.*) She served in that position until her removal on January 12, 2005. (*Id.*) At the time she was terminated, Plaintiff was employed pursuant to a contract that ran from September 1, 2004 to August 31, 2005. (*Id.*) The terms of the contract stated that Plaintiff could be terminated at the will of the President of UTPA. (*Id.*) The contract also allegedly provided

that her salary and benefits would be paid through the end of the contractual period regardless of the date of termination. (*Id.*) After her termination, UTPA allegedly represented to Plaintiff that UTPA would only pay her salary and contractual benefits through May 31, 2005. (*Id.*) Plaintiff has apparently not received her salary or contractual benefits for the last part of her contractual period, May 31, 2005 to August 31, 2005. (*See id.*)

Plaintiff's claim for her accrued vacation benefits is based on the UTPA Handbook of Operating Procedure ("Handbook") section 7.3.4, which allegedly requires any unused vacation balance to be paid as a settlement to the employee after the employee has been terminated. (*Id.*) Section 7.6.3 of the Handbook states that "employees who have completed six months of continuous employment with the State are entitled to be paid for any unused vacation upon termination of employment." (*Id.*) Plaintiff alleges that she accrued approximately $26,785.00 in vacation benefits prior to her termination and that UTPA has not paid her that amount in violation of the Handbook provisions. (*Id.*)

Plaintiff's Equal Pay Act claim was based on an allegation that the male deans of the five other colleges at UTPA averaged a higher salary than she did. (Docket No. 2, Ex. 4). She alleges that she had the most seniority of any of the deans, received positive yearly evaluations and was responsible for improving the UTPA as a whole. *(Id.)*

Over two-and-a-half years after she filed her Original Petition in state court, Plaintiff filed her First Amended Petition on December 17, 2007. (Docket No. 2, Ex. 15). The facts in the First Amended Petition were the same as those in her Original Petition. (*Id.*) The amended petition withdrew her breach of contract and takings claims, but her Equal Pay Act claim and assertion of damages remained the same. (*Id.*)   On February 29, 2008, Plaintiff filed her Second Amended

Petition. (Docket No. 2, Ex. 17). Plaintiff added a claim under Title IX of the Education Amendments of 1972 seeking as damages the previously claimed accrued vacation benefits. (*Id.*) The Title IX claim added two factual allegations: (1) two male employees received lump-sum distributions of their accrued vacation benefits when their positions with UTPA ended, with one of those men leaving contemporaneously with Plaintiff; and (2) UTPA cut Plaintiff a check for her accrued vacation benefits, but destroyed the check before Plaintiff received it. (*Id.*) Plaintiff appears to have added a justification in her Second Amended Petition for adding the new claim under Title IX seeking her vacation benefits, stating that UTPA had "expressly denied that she [was] entitled to her accrued vacation benefits under either Title VII or the Equal Pay Act." (*Id.*) Plaintiff's Second Amended Petition also amended her request for damages to now specifically ask for punitive damages. (*Id.*) Four days after the filing of the Second Amended Petition, UTPA filed a Notice of Removal with this Court on March 4, 2008. (Docket No. 1). UTPA asserted that the addition of the Title IX claim in the Second Amended Petition revived UTPA's right to remove the action to this Court. (Docket No. 1). UTPA concedes that Plaintiff's Original Petition was removable to federal court, that it did not file a notice of removal within thirty days of receiving the petition and, thus, waived its right to remove based on the Original Petition. UTPA is now limited to seeking removal through the revival exception to 28 U.S.C. § 1446(b) based on Plaintiff's addition of the Title IX claim for accrued vacation benefits in her Second Amended Petition.

II.    REVIVAL EXCEPTION TO REMOVAL JURISDICTION

Section 1446(b) of Title 28, United States Code, governs the timeliness of removal of a state action to federal court:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of a summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. . . .

The revival exception is a judicially-created exception to section 1446(b) and provides that "a lapsed right to remove an initially removable case within thirty days is restored when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit." *Johnson v. Heublein, Inc.*, 227 F.3d 236, 241 (5th Cir. 2000); *see Wilson v. Intercollegiate (Big Ten) Conference A.A.*, 668 F.2d 962, 965 (7th Cir. 1982) (recognizing the revival exception where "the plaintiff files an amended complaint that so changes the nature of his action as to constitute "substantially a new suit begun that day."); *Henderson v. Midwest Refining Co.*, 43 F.2d 23, 25 (10th Cir. 1930) (allowing removal after finding an amended petition was "not an amplification of the alleged cause of action as it was stated in the first petition; but a change, both from fact to fact and from law to law–an abandonment of the original for a new cause of action.") Underlying the revival exception is the premise that "though a defendant has submitted himself to state court jurisdiction on one cause of action, this does not prevent his removing the cause when an entirely new and different cause of action is filed" in the same case. *Cliett v. Scott*, 233 F.2d 269, 271 (5th Cir. 1956). Any doubts concerning the propriety of applying the revival exception must be resolved against removal and in favor of remanding the case back to state court. *Baych v. Douglass*, 227 F. Supp. 2d 620, 623 (E.D. Tex. 2002); *see Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

Whether to apply the revival exception is a determination made on a case-by-case basis with regard to the purpose of the thirty-day limitation imposed on removal as well as the proper allocation of decision-making responsibility between state and federal courts. *Johnson*, 227 F.3d at 242 (citing *Wilson*, 667 F.2d at 965). The thirty-day limitation on removal deprives the defendant of any tactical advantage in seeing how the case goes in state court before removing and prevents the delay and wastefulness of starting over in a federal court after significant proceedings in the state court. *Id.*

In *Johnson*, the Fifth Circuit found the revival exception applicable because the allegations in an amended complaint bore "no resemblance whatsoever to the allegations of the [original] complaint." *Johnson*, 227 F.3d at 242 (quoting *Johnson v. Heublein, Inc.*, 982 F. Supp. 438, 444 (S.D Miss. 1997)). The amended petition created a "virtually new, more complex, and substantial case" against the defendants, realigning the parties and exposing the defendants to substantially new and greater damages than were brought as part of the original petition. *Id.* The Fifth Circuit also found that applying the revival exception would not create any waste or delay as the state court had not held any significant proceedings on the new issues. *Id.*

Since *Johnson*, several district courts have recognized the existence of the revival exception, but found the exception otherwise inapplicable to the amended pleadings at issue in each case. *See, e.g., Daggett v. Am. Security Ins. Co.*, No. 2:08-cv-46-FtM-29DNF, 2008 WL 1776576, at *3 (M.D. Fla. Apr. 17, 2008); *City of Kenner v. United Fire and Casualty Co.*, Civil Action No. 07-2678, 2007 WL 2177781, at *2 (E.D. La. July 30, 2007); *Rubstello, Inc. v. Trans. Ins. Co.*, No. Civ. S-05-0688 FCD DA., 2005 WL 1503924, at *4 (E.D. Cal. June 22, 2005); *Tully v. Am. Fed. of Gov't Employees Local 3148*, No. 00-CV-7664(JG), 2001 WL 253034, at * 2 (E.D.N.Y. Mar. 9, 2001); *see also Dunn v. Gaiam*, 166 F. Supp. 2d 1273, 1279 (C.D. Cal. 2001) (finding the Fifth Circuit's decision in

*Johnson v. Heublein* to be the "only reported case . . . which actually relies on this [revival] exception."). District courts in the Fifth Circuit have found the revival exception inapplicable where the core of the lawsuit, whether it be the facts underlying the case or the legal theories, has not been changed by the amended pleadings. *See, e.g., Baych v. Douglass*, 227 F. Supp. 2d 620, 623 (E.D. Tex. 2002) (holding revival exception in applicable where underlying factual situation remained the same); *Turner v. Mine Safety Appliances Co.*, No. Civ. A. 01-0325, 2001 WL 456351, at *3 (E.D. La. Apr. 27, 2001) (finding revival exception in applicable where new claims were based on exposure to asbestos, which was the core of the original petition); *see Kenner*, 2007 WL 2177781 at *2 (adding similar claims arising from the same insurance policy referenced in the original petition does not support applying the revival exception);

Courts from other circuits have seemed to follow this pattern in a myriad of situations, including those involving facts similar to the case at hand. *See Samuels v. Allstate Ins. Co.*, No. Civ. A. 05-2490 KHV, 2006 WL 449257, at *4 (D. Kan. Feb. 23, 2006); *Rubstello*, 2005 WL 1503924 at *5. The holding from the *Samuels* court is particularly instructive in this case. *See Samuels*, 2006 WL 449257 at *4. In *Samuels*, the plaintiff amended the original petition to include employment discrimination and retaliation claims. *Id.* The court held that these new claims did not substantially alter the issue of whether the defendant unlawfully terminated the plaintiff, which was the core of the lawsuit. *Id.* "Although the amended claims will require additional evidence and different burdens of proof, this difference is not so substantial as to afford defendants a new opportunity to remove." *Id.*

Dr. Medrano contends that the core of her pleadings and claims remain the same in her Second Amended Petition, despite the addition of the Title IX claim. UTPA asserts that Plaintiff

added the Title IX claim to reinsert vacation pay as an issue in this lawsuit, after that claim had been withdrawn as part of Plaintiff's First Amended Petition. According to UTPA, the Title IX claim: (i) is a new complex action under federal law that greatly broadens the scope of what might constitute actionable behavior by UTPA; (ii) introduces new legal standards, burdens of proof, remedies, defenses; and (iii) vastly expands what may be considered admissible evidence. UTPA also asserts that it may face termination of financial support from the United States as a result of this action. Lastly, UTPA contends that since Plaintiff filed her Second Amended Petition only a week before the end of discovery, UTPA lacked the opportunity to conduct discovery appropriate to the new claim.

Plaintiff's Title IX claim has not so substantially altered the character the action to constitute essentially a new lawsuit. While the Title IX claim may well require additional evidence and different burdens of proof, such differences are not so substantial as to create a new opportunity for UTPA to remove this action. *See Samuels*, 2006 WL 449257 at *4. Plaintiff's claims for unequal pay and a lump-sum payment of accrued vacation benefits have been at the heart of Plaintiff's lawsuit ever since the filing of the Original Petition. Plaintiff's vacation benefits claim was a part of the state court case for over two-and-a-half years while discovery was ongoing in the state court. Even during the two-month lapse where this claim had been withdrawn (between the filing of the first and second amended petitions), the First Amended Petition contained all of the same facts as the Original Petition which set out Plaintiff's vacation benefits claim. That Plaintiff would continue to seek some claim that would entitle her to a lump-sum payment of her vacation benefits cannot come as a surprise to UTPA and certainly does not mark a substantial change creating an amended petition bearing "no resemblance whatsoever to the allegations of the [original] complaint."

*Johnson*, 227 F.3d at 242. Further, interests in avoiding waste and delay also weigh in favor of remanding this case to a state court which has overseen the case for nearly three years, guided extensive discovery, and set two trial dates for this case since the beginning of this year. Viewing all of these facts and issues in light of the prevailing law governing removal and remand, UTPA has not demonstrated that the narrow revival exception should apply in this action. Plaintiff's Motion of Remand (Docket No. 6) is **GRANTED**. The Clerk of Court is directed to take such appropriate actions to remand this action back to state court. All costs are to be borne by the party incurring the same.

Signed, this 29th day of May, 2008.

Andrew S. Hanen
United States District Judge